Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for defendant.

**Karatha B. MITCHELL, Plaintiff,**

v.

**WARNER–JENKINSON COMPANY, Defendant.**

**No. 77–612C(4).**

United States District Court, E. D. Missouri, E. D.

June 29, 1978.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits following a trial to the Court on alleged violations of 42 U.S.C. § 1981. Plaintiff alleges that, as a black, she was treated differently from white employees in that 1) she was denied access to the women's washroom; 2) she was not assigned a parking space; 3) she worked in an office smaller and less attractive than others; and 4) she was not rehired following the termination of an employee strike in which she participated. After consideration of the matter, the Court makes the following findings of fact and conclusions of law as set forth in the memorandum opinion below.

Plaintiff, a black citizen of the United States, brought suit against her employer, Warner-Jenkinson Company, a corporation duly organized and existing under the laws of the State of Missouri, pursuant to 42 U.S.C. § 1981. Jurisdiction over this matter is founded on 28 U.S.C. §§ 1331 and 1343.

Plaintiff was hired as a records clerk in the Color Packaging Department of defendant's Hyde Park plant on April 16, 1973. Her duties included expediting invoices, working up orders, and using adding and photocopying machines. Defendant Company produces flavors and food colorings.

On June 6, 1975, the International Union, United Automobile, Aerospace and Agricultural Workers of America, called a strike in which plaintiff participated. During the second week of the strike, defendant began to hire replacements for the striking employees. On July 28, 1975, defendant eliminated plaintiff's job. A new position which incorporated the duties previously performed by plaintiff, plus added secretarial responsibilities and batch determination, was created. A white female, Davita Kimble, was hired to fill this position on July 28, 1975.

The strike against defendant ended on August 8, 1975. Plaintiff was apprised of the elimination of her job and was placed second on a preferential hiring list that included all of the striking employees in her division. Of the ten employees on this list, six were black and four were white.

All employees on the list were subsequently offered reemployment, and with the exception of plaintiff, all accepted the positions offered. On August 13, 1975, defendant offered plaintiff a position as a Grade Two packer in the Color Department at an increase in salary. This was not an offer of an equivalent job, and plaintiff declined the position because she desired office rather than factory work. It was defendant's uncontroverted testimony that at no time since the elimination of plaintiff's job and the hiring of Ms. Kimble has a clerical position opened up with the Company.

The Court finds that defendant did not fail to rehire plaintiff on the basis of race. Plaintiff's job was lawfully eliminated during the course of the strike. *NLRB v. MacKay Radio and Telegraph Company,* 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); *NLRB v. Plastilite Corporation,* 375 F.2d 343 (8th Cir. 1967). The evidence established that as a result of management's performing plaintiff's job during the strike, it was determined that the position could and should be combined with additional duties. Prior to the strike, all necessary typing had been sent to defendant's Ballwin plant. After the new position was created, typing was to be done as part of the responsibilities of the new job. Plaintiff had done no typing for defendant. Consequently, the decision to eliminate plaintiff's position and combine the duties previously performed by plaintiff with additional responsibilities was a legitimate management decision not based on race.

In addition, even though the testimony at trial revealed that there has been no clerical position open with the Company since the strike, defendant did make an attempt to rehire plaintiff by offering her the factory job. All other black employees on the preferential hiring list were also offered positions with defendant.

Plaintiff claims that she was given an office that was not of comparable quality to that of similarly situated white employees. When plaintiff was first employed by defendant, her eight by sixteen foot office, which was shared with two other employees, was located on the first floor of Building 14 along with the rest of the Color Packaging Division. In September, 1974, as part of a long-standing renovation plan, plaintiff's entire department moved to the ground floor of Building 12. Plaintiff's office, made of the same materials as the previous one, was a prefabricated eight by eight foot, air conditioned aluminum shell with plywood paneling inside. Plaintiff's office, which she alone occupied, was the same kind and size as that of her supervisor, Glen Madeiros.

While plaintiff was employed with defendant, there was only one other woman who worked in the same building and in a similar capacity. Ernestine Griffin, who was white, had been employed in the Shipping Department approximately one year prior to plaintiff's being hired. Ms. Griffin's office, which was on the first floor of Builidng 12, was larger than that of the

plaintiff, but this office was shared by Ms. Griffin with another clerk, her supervisor, two teletype machines and a duplicating machine. After plaintiff's job was eliminated, and Davita Kimble was hired, Ms. Kimble worked in the ground floor office used by plaintiff at the time of the strike. A few months later, when the laboratory was put in, she moved upstairs to a larger office located next to the lab. Ms. Kimble's duties included typing lab reports.

Because plaintiff was moved to a smaller office as part of a plan to relocate the entire division, the Court cannot find that any difference in treatment was afforded plaintiff on the basis of race. While Ernestine Griffin's office was larger and apparently more attractive, it was also shared by other employees. Additionally, Ms. Griffin held a year's seniority over the plaintiff. Testimony presented on behalf of the defendant indicates that plaintiff's office was cleaned with the same regularity as others in her department. Accordingly, the Court finds that in this regard, plaintiff did not work under unequal conditions established on the basis of race.

Defendant maintained a canopy-covered parking area that contained eleven spaces. These spaces were assigned by seniority. It was defendant's uncontroverted testimony that at no time during plaintiff's tenure with the defendant did anyone with less seniority than plaintiff have an assigned space under the canopy.

Defendant also maintained an open, chat parking lot for employees with unmarked spaces. If cars were properly positioned, the lot would hold eighteen automobiles. Four of these spots were assigned, one each to the plant manager, chemist and engineer, who were management personnel, and one to a visitor. The remaining spots were available on a first come, first served basis. It was not until at least one year after the termination of plaintiff's employment with defendant that any of the spots other than the four previously mentioned were assigned. At this time, all spaces on this lot were assigned in order to make maximum use of the parking area available.

Accordingly, the Court finds that plaintiff's claim that she was denied a reserved parking space because of her race is totally without merit.

Plaintiff alleges that she was subjected to unequal working conditions because she was denied access to the women's washroom. The thrust of plaintiff's complaint in this regard is that she was not given a key to the washroom, and thus was unable to use the facility. However, there was testimony, which the Court finds credible, that a key was hung on the doorjamb of the Shipping Department, and that this key was available to plaintiff. There was also testimony that the washroom was not locked during the day. Plaintiff's own testimony that the washroom in question was "real nice" and that it had a table, mirrors, carpeting, and a locker that plaintiff used belies plaintiff's claim that she was denied access thereto. The Court further finds that the only time that plaintiff was unable to use the washroom was when the facility was locked after the carpet had been cleaned and had not yet dried. Use of another washroom was made available to plaintiff. Therefore, plaintiff suffered no unequal treatment in this regard.

In summary, the Court finds that after plaintiff made her prima facie case, the defendant met its burden of showing that plaintiff was not afforded any unequal treatment on the basis of race. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Accordingly, judgment will be entered for the defendant, together with all costs herein incurred. Defendant's request for attorney's fees is denied because the Court does not find that plaintiff's action was frivolous, unreasonable, or without foundation. *Christianburg Garment Company v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).